IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SERVICEMASTER OF FAIRFAX, INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 16-02589 |
| | * | |
| SERVICEMASTER RESIDENTIAL/ COMMERICAL SERVICES, L.P. et al. | * | |
| | * | |
| Defendants. | * | |

******

**MEMORANDUM OPINION**

Pending in this contractual dispute is a motion to transfer filed by the Defendants ServiceMaster Residential/Commercial Services, LP, d/b/a ServiceMaster; SM Clean L.L.C.; and David Carpenter (ECF No. 6). The issues are fully briefed and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the Defendants' motion is granted.

**I.      BACKGROUND**

On August 24, 2013, Stephen Simmons ("Simmons"), through his company, Plaintiff ServiceMaster of Fairfax, Inc. ("Plaintiff"), entered into four separate franchise agreements with ServiceMaster Residential/Commercial Services, L.P. ("ServiceMaster"), a company specializing in cleaning and disaster restoration services. *See* Complaint, ECF No. 2 at 6. The franchise agreements granted Plaintiff a license to operate the ServiceMaster businesses in territories covering the District of Columbia, Virginia, and Maryland. *Id.* at 7. Each franchise agreement includes an identical forum-selection clause mandating that all litigation must be

1

venued exclusively in Memphis, Tennessee—the location of ServiceMaster's principal place of business. *See* 1998 Franchise Agreement, ECF No. 6-3 at 20; 1977 Franchise Agreement, ECF No. 6-4 at 19; 1963 Franchise Agreement, ECF No. 6-5 at 19; 1957 Franchise Agreement, ECF No. 6-6 at 19 (collectively, the "Franchise Agreements").[1] The 1963 Franchise Agreement also includes an addendum amending the Franchise Agreement's "Applicable Law" section to read: "The Maryland Franchise Registration and Disclosure Law allows a franchisee to bring a lawsuit in Maryland for claims arising under this Law." ECF No. 6-5 at 26 (the "Maryland Addendum").

On July 1, 2016, Plaintiff filed its Complaint in the Circuit Court for Montgomery County, Maryland against ServiceMaster, ServiceMaster's general partner "SM Clean LLC", and David Carpenter who supports ServiceMaster franchises in the northeast region (collectively, the "Defendants"). *See* ECF No. 2. The seven-count complaint in part alleges violations of the Maryland Franchise Registration and Disclosure Law, Md. Code Ann., Bus. Reg. § 14–201 *et seq.* ("Maryland Franchise Law"). *See id.* at 20. Plaintiff specifically avers that beginning in 2013, Simmons sought to sell certain portions of his franchise territories because business was declining. After Simmons found suitable buyers for some of his franchise territories, he informed the Defendants. Defendants, in turn, approached the same buyers and offered to sell the franchises at a reduced cost, thereby undercutting Plaintiff. *See id.* at 7. When Simmons contested the Defendants' ability to sell franchises directly to the prospective buyers, ServiceMaster retaliated by sending Simmons four default letters, one for each his franchises. Plaintiff also complains that the Defendants failed to meet certain other obligations included in the Franchise Agreements.

On July 15, 2016, the Defendants removed the case from the Montgomery County Circuit Court to this Court, asserting diversity of citizenship pursuant to 28 U.S.C. § 1332. *See* ECF No.

---

[1] The numbers associated with each franchise agreement are not years but franchise licensing numbers.

2

1. Defendants then filed a motion to transfer this to the United States District Court for the Western District of Tennessee pursuant to the Franchise Agreements' forum-selection clauses under 28 U.S.C. § 1404(a). *See* ECF No. 6.

## II.   ANALYSIS

The federal transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] Section 1404 is procedural rather than substantive and so federal law governs the analysis. *See Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988); *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990); *Bank v. Advanced Sys. Servs., Corp.*, No. 1:09CV23 (GBL), 2009 WL 855730, at *4 (E.D. Va. Mar. 30, 2009) ("[S]ince forum clauses involve procedural issues and choice of law clauses are substantive, federal law, not choice of law provisions, should determine whether a forum clause is mandatory or permissive.").

Under § 1404(a), the court evaluates the propriety of transfer by considering such factors as the convenience of the parties and the relevant public interests. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Tex.*, 134 S. Ct. 568, 581 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Because forum-selection clauses are "bargained for by the parties," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional

---

[2] "When considering whether to transfer an action to a different venue, this Court must first determine whether the action could have been brought in the transferee district." *Davis v. White*, No. RDB-15-1108, 2016 WL 1159206, at *6 (D. Md. Mar. 24, 2016) (citing *Aphena Pharma Sols.-Maryland LLC v. BioZone Labs., Inc.*, 912 F. Supp. 2d 309, 318 (D. Md. 2012)). Plaintiff concedes that this case could have been brought in Tennessee. *See* ECF No. 11–12.

cases." *Id.* (alteration in original) (*quoting Stewart*, 487 U.S. at 33) (internal quotation marks omitted).

In *Atlantic Marine*, the United States Supreme Court explained that a valid forum-selection clause changes the § 1404 analysis in three ways. First, "the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* This is because, by executing a contract with a specified forum, the plaintiff has effectively chosen her forum before the dispute arises. *Id.* at 581–82.

Second, arguments about the parties' interests are irrelevant. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 582. This means that a district court may only consider arguments about the public-interest factors.

"Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* The Court's analysis should militate against enforcing the forum-selection clause only in the most "extraordinary circumstances". *Id.* at 581.

This Court recognizes that *Atlantic Marine* involved a mandatory forum selection clause and was silent on whether the same analysis applies to permissive forum selection clauses. A mandatory forum selection clause is "'one containing clear language showing that jurisdiction is appropriate only in the designated forum.'" *Davis Media Grp., Inc. v. Best W. Int'l, Inc.*, 302 F. Supp. 2d 464, 467 (D. Md. 2004) (quoting *Koch v. Am. Online, Inc.*, 139 F. Supp. 2d 690, 693

(D. Md. 2000)). A permissive forum selection clause, on the other hand, "merely permits jurisdiction in the selected forum without precluding it elsewhere." *Id.* (internal citation and quotation marks omitted). The Fourth Circuit has not yet addressed whether *Atlantic Marine* applies to a permissive forum-selection clause; however, this Court notes that the majority of post-*Atlantic Marine* courts have declined to extend *Atlantic Marine*'s holding to permissive forum-selection clauses. *See UEK Corp. v. Univ. of Manitoba*, No. GLR-13-3832, 2015 WL 11027769, at *2 (D. Md. Mar. 26, 2015) (citing *Networld Commc'ns, Corp. v. Croatia Airlines, D.D.*, No. 13-4770 SDW, 2014 WL 4724625, at *2 (D.N.J. Sept. 23, 2014) (citing cases)). The distinction stems from the language employed by the *Atlantic Marine* Court. Its discussion of forum-selection clauses describes those where "a plaintiff agrees by contract to bring suit *only in a specified forum*," suggesting that the Supreme Court contemplated only mandatory forum-selection clauses when assessing their effect on *forum non conveniens* analysis. *See Atl. Marine*, 134 S. Ct. at 582 (emphasis added); *see also RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F. Supp. 3d 1073, 1085 (S.D. Iowa 2014). This logic is persuasive. Thus, before the Court applies the amended *forum non conveniens* analysis as *Atlantic Marine* instructs, it must decide whether the parties' forum-selection clause is permissive or mandatory.

The forum selection clause in this case provides:

> 25.4 <u>Jurisdiction and Venue</u>. Unless the law applied in accordance with Paragraph 25.1 of this Agreement provides otherwise, all litigation, court proceedings, arbitration proceedings, mediation proceedings, lawsuits, court hearings and other hearings initiated by the Franchisor or the Franchisee must and will be venued exclusively in Memphis Tennessee. The Franchisee, each of its officers, directors and shareholders, if any, and the personal guarantors, if any, do hereby agree and submit to personal jurisdiction in the State of Tennessee for purposes of any suit, proceeding or hearing brought to enforce or construe the terms of this Agreement or to resolve any dispute or controversy arising under, as a result of, or in connection with the Agreement or the parties' relationship. The parties do hereby agree and stipulate that any such suits, proceedings and hearings will be exclusively venued and held in Memphis, Tennessee. The Franchisee and each of

> its officers directors and shareholders, if any, and the personal guarantors, if any, waive any rights to contest such venue and jurisdiction and any claims that such venue and jurisdiction are invalid.

ECF No. 6-5 at 19. Paragraph 25.1, titled "Governing Law," which is referenced in Paragraph 25.4, states:

> This Agreement takes effect upon its acceptance and execution by the Franchisor in the State of Tennessee, and except to the extent governed by the United States Trademark Act of 1946 (Lanham Act, 15 U.S.C. § 1051 et seq.), shall be interpreted and construed under the laws of the State of Tennessee, which laws shall prevail in the event of any conflict of law. Notwithstanding the foregoing, if the state in which the Franchised Business is located has enacted legislation regulating franchising which requires that the law of that state shall apply to the relationship created by this Agreement, it is agreed that this Agreement shall be interpreted and construed under the laws of the state in which the Franchised Business is located.

*Id.* The parties then amended the "Applicable Law" section in only one of the four agreements—1963 Franchise Agreement—with the following language:[3]

> Section 25 of the Agreement, under the heading "Applicable Law", is amended by the addition of the following language to the original language that appears therein:
>
> 'The Maryland Franchise Registration and Disclosure Law allows a franchisee to bring a lawsuit in Maryland for claims arising under this Law.'

*Id.* at 26. Because this section encompasses subsections 25.1 (Governing Law) and 25.4 (Jurisdiction and Venue), the amendment applies to these provisions.

Section 25.4 is clearly a mandatory forum-selection clause. It provides that "*all* litigation . . . *must and will* be venued *exclusively* in Memphis, Tennessee." ECF No. 6-5 at 19 (emphasis added).[4] *See Brooks-Williams v. Keybank, Nat'l Ass'n*, No. WDQ-15-559, 2015 WL 9255327, at

---

[3] Defendants argue that the Maryland Addendum is only attached to the 1963 Franchise Agreement. Plaintiff claims that the Addendum applies to all four Franchise Agreements. *See* ECF No. 16 at 2 n.1. Because the Court concludes that the Addendum does not affect the Court's analysis, the Court will not resolve this particular factual dispute.

[4] The United States District Court for the Western District of Tennessee physically sits in Memphis, Tennessee. Neither party addresses whether a forum-selection clause that sets jurisdiction in a particular county—but not a particular court system—gives jurisdiction to the federal district court that is located in the county specified. Courts

6

*4 (D. Md. Dec. 17, 2015) ("The term 'must' is synonymous with 'shall,' which courts routinely find is indicative of mandatory forum selection clauses."). It also states that the "Franchisee . . . waive[s] any right[] to contest such venue and jurisdiction and any claims that such venue and jurisdiction are invalid." ECF No. 6-5 at 19.

      To be sure, the clause provides an exception for when the governing law of the state (Maryland) mandates otherwise. But that is not the case here. The Maryland Addendum simply states that the "Maryland Franchise Registration and Disclosure Law allows a franchisee to bring a lawsuit in Maryland for claims arising under this Law." This is different than saying violations of the Maryland Franchise Registration and Disclosure Law *must* be brought in Maryland. This permissive exception for a subcategory of claims arising under Maryland law does not alter the mandatory nature of the agreement's forum-selection clause.

      Courts have held that the kind of exception found in the Maryland Addendum does not transform a mandatory into a permissive forum selection clause. *See, e.g.*, *Frietsch v. Refco, Inc.*, 56 F.3d 825, 829 (7th Cir. 1995); *Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1324–25 (S.D. Fla. 2016); *cf. K & V Sci. Co. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499–500 (10th Cir. 2002) (surveying the law from other circuits on the distinction between a permissive and mandatory forum selection clause). In fact, the phrase "[u]nless the law applied in accordance with 25.1 of this Agreement provides otherwise" would be rendered meaningless if the forum selection clause in 25.4 were not mandatory. The function of the clause is to rule out alternative sites and require that lawsuits be

---

in this circuit have held that it does. *See, e.g.*, *Ferri Contracting Co. v. Town of Masontown, W. Virginia*, No. 03-1303, 2003 WL 22244905, at *1 (4th Cir. Sept. 29, 2003) (unreported) ("Where the forum selection clause imposes a geographic limit, litigation is permitted in either a federal or state court within the specified geographic boundary."); *Nahigian v. Juno-Loudoun, LLC*, 661 F. Supp. 2d 563, 568 (E.D. Va. 2009) (holding that "if a venue provision does not contain a reference to sovereignty, then a geographic restriction permits litigation in either the state or federal courts for that geographic region."). *But see Rihani v. Team Exp. Distrib., LLC*, 711 F. Supp. 2d 557 (D. Md. 2010) (precluding venue in federal court when the language of the forum-selection clause limited venue to a county where a federal court did not physically sit).

brought in Tennessee, "provided there is no legal obstacle to suing there." *Cf. Frietsch v. Refco, Inc.*, 56 F.3d at 829 (7th Cir. 1995) (interpreting similar language).

Indeed, when reading all provisions in harmony, the Maryland Addendum clarifies that no bar to suit in Tennessee exists. Section 25.1 provides that "if the state in which the Franchised Business is located has enacted legislation regulating franchising which requires that the law of that state shall apply to the relationship created by this Agreement, it is agreed that this Agreement shall be interpreted and construed under the laws of the state in which the Franchised Business is located." ECF No. 6-5 at 19. The effect of section 25.1 is to delineate the one exception to the mandatory forum selection clause—when the law of the state requires suit be brought elsewhere. The Addendum, therefore, makes clear that Maryland law does not "require" but simply "allows" for suit to be brought in Maryland. Thus, if anything, the Addendum renders indisputable that the forum selection clause is mandatory.

Because the forum-selection clause is valid and mandatory, the Court must only consider § 1404's public interest factors. In essence, "[c]onsideration of the interests of justice is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 857 (D. Md. 2005) (citation and internal quotation marks omitted). Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *AIG Europe Ltd. v. Gen. Sys., Inc.*, No. RDB-13-0216, 2013 WL 6654382, at *4 (D. Md. Dec. 16, 2013) (quoting *Atl. Marine Const. Co.*, 134 S. Ct. at 581 n.6). Plaintiff bears the burden of proving that the case should not be transferred to the previously agreed-upon forum. *See Atl. Marine Const. Co.*, 134 S. Ct. at 582.

Plaintiff contends that Maryland maintains an interest in deciding this case because the "vast majority of the alleged conduct occurred in this state." ECF No. 16 at 15; *See, e.g.*, *Nguyen v. The Anthem Companies, Inc.*, No. DKC 15-2268, 2016 WL 1321420, at *5 (D. Md. Apr. 5, 2016). But Plaintiff provides no factual basis to conclude that any of the alleged misconduct occurred in Maryland. At best, the Complaint merely avers that Plaintiff's franchise region encompassed parts of Maryland.

Plaintiff next argues that Maryland law governs the allegations in his Complaint and so the case should stay in the Court with familiarity of that law. *See Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 618 (D. Md. 2002). However, "this consideration is given 'significantly less weight when the case involves basic or sufficiently well-established . . . issues of state law or when there is no reason to believe that the applicable law of the forum differs markedly from the law of the proposed transferee state.'" *Topiwala v. Wessell*, No. WDQ-11-0543, 2012 WL 122411, at *8 (D. Md. Jan. 12, 2012) (quoting 15 C. Wright & A. Miller, *Federal Practice & Procedure* § 3854 (4th ed.)). This action involves claims for declaratory judgment, breach of contract, tortious interference, violations of the Virginia Retail Franchising Act, and violations of the Maryland Franchise Law stemming from franchise agreements executed in Tennessee for franchises in Maryland, Virginia, and the District of Columbia. It therefore involves questions of federal, Maryland, Virginia, D.C., and Tennessee law. Accordingly, no one state's law, least of all Maryland, will govern the entire proceeding. Familiarity with Maryland law, therefore, is not outcome determinative.

To conclude, the forum selection clause included in the franchise agreements is mandatory, requiring transfer to the Tennessee federal court.  Further, Plaintiff has failed to

prove that any of the exceptions to enforcement of the clause apply here. Defendants' motion to transfer the suit to the Western District of Tennessee, therefore, is granted.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to transfer venue to the United States District Court for the Western District of Tennessee is granted. A separate Order will follow.

7/17/2017                                               /S/
Date                                                       Paula Xinis
United States District Judge